IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID WATTIE-BEY and ALICIA WATTIE, | : | Civil No. 1:10-CV-2224 |
| Plaintiff, | : | |
| | : | (Chief Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| ATTORNEY GENERAL, COMMONWEALTH OF PENNSYLVANIA, DIVISION OF CHILDREN AND YOUTH SERVICES, | : | |
| Defendants. | : | |

**REPORT AND RECOMMENDATION**

**I.     Statement of Facts and of the Case**

This is a *pro se* civil rights complaint brought by David Wattie-Bey and Alicia Wattie, relating to what appears to be a recently filed, and pending, child custody dispute between the Plaintiffs and Dauphin County children and youth authorities. (Doc. 1.) The Plaintiffs' complaint recites that this dispute began in the latter part of September, 2010, when children and youth services sought, and obtained, a state court order authorizing them to enter the Wattie residence and remove an eight year-old child from that home.(Id.)

1

According to the documents filed by the Plaintiffs in this lawsuit, this order was entered by the state court based upon an application which asserted, in part, that it was believed that a child was inside the Wattie home, but that child had not been seen outside the home for four years. (Id.) The pleadings filed in state court further alleged that the home was in a state of disarray with animal feces observed by others on the floor in the residence. (Id.) The state court pleadings further alleged that the unseen child had been heard inside the home knocking on the windows and speaking to her mother. (Id.) Furthermore, according to the state court pleadings, the Plaintiffs, who are believed to be the parents of this child, had refused to cooperate with state officials in identifying the child, and confirming the child's well-being. (Id.)

On the basis of these averments it appears that an order was entered in state court on September 21, 2010, permitting state child welfare officials to enter the home, locate the child, and place her in juvenile custody pending further proceedings in this case. Those proceeding are apparently still pending since the Plaintiffs' complaint alludes to hearings scheduled in this state case for November 2, 2010. (Id.) After reciting these facts, the Plaintiffs' complaint alleges, in a summary fashion, that the conduct of the Commonwealth in this pending child-welfare, child-custody matter violates the Plaintiffs' constitutional rights. To redress these alleged constitutional

infractions, the Plaintiffs seek declaratory and injunctive relief, as well as $650,000 in damages.

Along with their complaint the Plaintiffs filed a motion for leave to proceed *in forma pauperis*. (Doc. 2). Having carefully reviewed this complaint, we conclude that the pleading fails to state a claim upon which relief can be granted. Accordingly, for the reasons set forth below, it is recommended that the motion for leave to proceed *in forma pauperis* be granted but the complaint should be dismissed.

**II. Discussion**

  **A. Legal Standards Governing Sufficiency of Civil Complaints**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." With respect to

this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

4

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis

6

both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint names proper parties to the lawsuit.

### B. The Plaintiffs' Complaint Fails to State a Claim Upon Which Relief Can be Granted.

Applying these legal benchmarks, we find that in this case the Plaintiffs' *pro se* complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Indeed, the initial review of the Plaintiffs' complaint has identified the following four fatal deficiencies in this pleading.

#### (1) The Complaint Invites the Court to Violate the Domestic Relations Doctrine

First, the Plaintiffs' complaint fails because it invites this Court to engage in adjudication of a child custody matter. Yet it is clear, as a matter of federal practice, that the "domestic relations" doctrine generally forbids federal courts from indulging in the adjudication of state child custody cases. See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992); Solomon v. Solomon, 516 F.2d 1018 (3d Cir. 1975).

In our view, the policies underlying the domestic relations doctrine fully apply here and caution against federal intervention in this case. Fairly construed, the Plaintiffs' complaint demands that we federally adjudicate what is a pending state domestic relations matter, something that has long been recognized to fail outside the

province of the federal courts. Therefore, this court should decline the Plaintiffs' invitation and dismiss this action.

### (2) While a State Child Custody Case is Pending This Court Should Abstain From Intervening in This Matter

Moreover, this complaint, which invites this Court to intervene in a pending state child custody case, runs afoul of another settled tenet of federal law, the Younger abstention doctrine. This doctrine is inspired by basic considerations of comity that are fundamental to our federal system of government. As defined by the courts: "Younger abstention is a legal doctrine granting federal courts discretion to abstain from exercising jurisdiction over a claim when resolution of that claim would interfere with an ongoing state proceeding. See Younger v. Harris, 401 U.S. 37, 41 (1971)." Kendall v. Russell, 572 F.3d 126, 130 (3d Cir. 2009).

This doctrine, which is informed by principles of comity, is also guided by these same principles in its application. As the United States Court of Appeals for the Third Circuit has observed:

> "A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir.2005) (citing Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)). As noted earlier, the Younger doctrine allows a district court to abstain, but that discretion

can properly be exercised only when (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims. Matusow v. Trans-County Title Agency, LLC, 545 F.3d 241, 248 (3d Cir.2008).

Kendall v. Russell, 572 F.3d at 131.

Once these three legal requirements for Younger abstention are met, the decision to abstain rests in the sound discretion of the district court and will not be disturbed absent an abuse of that discretion. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Moreover, applying these standards, federal courts frequently abstain from hearing matters which necessarily interfere with on-going state cases. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002).

In this case, the Plaintiffs' complaint reveals that all of the legal prerequisites for Younger abstention are present in this case. First, it is evident that there are on-going state child custody proceedings pending in this case. Indeed, the complaint indicates that some hearing is presently scheduled in this case for November 2, 2010. Second, it is also apparent that those proceedings afford the Plaintiffs a full and fair opportunity to litigate these constitutional issues in the first instance in their pending state case. Finally, it is clear that the state proceedings implicate important state

9

interests, since this matter involves enforcement of state laws relating to the care and safety of children.

Since the legal requirements for Younger abstention are fully met here, the decision to abstain rests in the sound discretion of this Court. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319, 325 (3d Cir. 2004). Given the important state interests that exist in law enforcement in this field, and recognizing that the state courts are prepared to fully address the merits of this matter in the near future, we believe that the proper exercise of this discretion weighs in favor of abstention and dismissal of this federal case at the present time. Lui v. Commission on Adult Entertainment Establishments, 369 F.3d 319 (3d Cir. 2004); Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002). Therefore, it is recommended, consistent with the Younger doctrine, that this Court abstain from intervening in this pending state child custody, child welfare case.

    (3**)** **The Eleventh Amendment to the United States Constitution Bars This Lawsuit Against a State Agency**

In addition, this complaint also runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. The Plaintiffs' complaint names two state agencies as Defendants: the state Attorney General's Office and the Dauphin County Division of Children and Youth Services. However, as a matter of

constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and, therefore, also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various domestic relations agencies which are defined by statute as arms of the state courts, and institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009);Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept.

22, 2009). Similarly, the Office of Attorney General for the Commonwealth of Pennsylvania is also clearly "an agency of the Commonwealth of Pennsylvania, 71 P.S. § 732-201, and is immune from suit in federal court by reason of the Eleventh Amendment of the United States Constitution." Kreiger v. Pennsylvania Office of Atty. Gen., 44 F.App'x 537 (3d Cir. 2002). Therefore, absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. Moreover as a matter of statutory interpretation, the plaintiffs cannot bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

In short, the immunities conferred on these state agencies both by statute, and by the United States Constitution, also compel dismissal of this complaint as to the state agencies named in this action.

### (4) The Doctrine of Judicial and Quasi-Judicial Immunity Also Bars These Claims

Furthermore, to the extent that the complaint is liberally construed as seeking to hold state judicial agency employees like Domestics Relations agency staff

personally liable for damages, it is well-settled that these officials are also individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice. The scope of these protections extend beyond judges and prosecutors to those who take discretionary actions at the direction of the courts. As this Court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. *See Gallas,* 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d

13

992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial, quasi-judicial, and prosecutorial officials directly apply here and prevent the Plaintiffs from maintaining this civil action for damages against any Domestic Relations staff, who perform discretionary functions under the guidance and direction of the courts. Indeed, courts have specifically held that Domestics Relations agency staff are entitled to assert this immunity in civil rights actions. For example, in Slawek v. White, No. 91-1164, 1992 WL 68247, at 3 (E.D. Pa. 1992), the court conferred this immunity on domestic relations personnel, noting that such immunity was consistent with case law and stating:

In Hamill v. Wright, 870 F.2d 1032, 1037 (5th Cir.1989), a director of the domestic relations office was declared to be "entitled to full prosecutorial immunity from damages because his decision to bring

14

> contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties." (citing Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984 (1976)). Here, these Domestic Relations officials' conduct, under the facts relied upon by the Plaintiff, in continuing to prosecute the paternity claim was pursuant to Pennsylvania law and Judge Salas' directives, and as such are entitled to immunity.

Slawek, 1992 WL 68247, at 4. See, e.g., Buchanan v. Gay, 491 F. Supp.2d 483 (D. Del. 2007); White v. Green, No. 09-1219, 2009 WL 2412490 (E.D. Pa. 2009); Johnson v. Lancaster County Children and Youth, No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993).

Thus, entirely aside from the jurisdictional flaws in this case, and the constitutional immunity conferred upon the state by the Eleventh Amendment, this action fails against any individual defendants named in the amended complaint because the individual defendants are entitled to immunity from personal liability for their official actions in the judicial system.

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, the current complaint fails to state a viable civil rights cause of action for reasons that are

fundamental and cannot, in our view, be corrected through more artful pleading. Since the plaintiffs cannot readily correct the deficiencies identified in the complaint, and the factual and legal grounds proffered in support of the complaint make it clear that the plaintiffs have no right to relief in federal court at this time, granting further leave to amend would be futile or result in undue delay. <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004). Therefore, it is recommended that the complaint be dismissed without further leave to amend.

While federal law compels this ruling we recognize the concerns that motivate Plaintiffs in bringing this action. We are simply unable to grant them the relief they seek. A federal district court cannot act as a state appellate court in domestic relations matters. Rather, the Plaintiffs should understand that they must turn to the state trial and appellate courts to address these concerns in the first instance. Those courts stand ready to hear, and decide, these issues.

### III.    RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiffs' motion for leave to proceed *in forma pauperis* (Doc. 2) be granted , but that the complaint be dismissed for the failure to state a claim upon which relief can be granted.

The Plaintiff is further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of November, 2010.

                                        ***S/Martin C. Carlson***
                                        Martin C. Carlson
                                        United States Magistrate Judge